**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**WILLIAM DWAYNE SAVELL, #106847**                    **PETITIONER**

**VERSUS**                                        **NO.  4:07CV72 TSL-LRA**

**CHRISTOPHER EPPS and the
STATE of MISSISSIPPI**                                    **RESPONDENTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the Petition for Writ of Habeas Corpus of William Savell [hereinafter Petitioner] pursuant to 28 U.S.C. §2254, and the Response to the Petition for Writ of Habeas Corpus filed by Christopher Epps and the State of Mississippi [hereinafter Respondents].  Having carefully considered the pleadings, the record submitted, the briefs and argument of the parties, and the relevant legal authority, the Undersigned United States Magistrate Judge is of the opinion that Petitioner's request for relief pursuant to 28 U.S.C. §2254 should be denied.

## FACTUAL BACKGROUND

The facts in this case are extensive. The victim, Mandy Davis, was last seen alive by friends and family on Wednesday, September 10, 2003.  On that day, Davis had taken her automobile to Petitioner's automobile shop for repair, which is located next to Petitioner's trailer.   Patsy Pope, Savell's mistress, testified that she saw Davis at Petitioner's trailer at approximately 6:30 P.M., on September 10, 2003.  (R.  569, 517).

In the early morning of September 11, 2003, an investigator with the Neshoba County Sheriff's department was sent to Petitioner's trailer to investigate a report that Petitioner's truck was on fire. When the investigator arrived, he observed that the passenger compartment of the truck had been burned. Petitioner told the investigator that he had been inside his trailer when he saw the truck on fire. He also advised that he broke the truck's window to get the keys to his wrecker so that he could push the burning truck away. The investigator determined that the fire was man-made because traces of accelerants were present. The investigator also determined that the passenger's door was open during the blaze, contrary to Petitioner's claim that he had to break the window.

On Thursday, Petitioner called Davis's home to advise her automobile was ready. When Davis's mother arrived at the repair shop, Petitioner told her Davis had been there Wednesday and left with someone he did not see. On Saturday, September 13, 2003, Davis's mother reported her missing. That same day, Petitioner was asked to come to the police station to answer some questions concerning Davis. Petitioner told police investigator, Jimmy Reid, that Davis had been at his trailer on September 10, 2003, to get her automobile fixed and had methamphetamine that she was looking to sell. **<u>Savell v. State</u>**, 928 So.2d 961, 964. (Miss. App. 2006) Petitioner was also wearing a splint on his hand, which he said he injured breaking his truck window. **<u>Id</u>**. at 965.

On Tuesday, September 16, 2003, police interviewed Petitioner again and advised him of his *Miranda* rights, but he was not placed under arrest. At that

time, Petitioner mentioned a person named "Iceman" whom he "used to run dope for." **Id**. Petitioner told police that he suspected that Iceman picked Davis up from his trailer. **Id**. Petitioner reportedly was "very inconsistent" in this interview and "would say one thing, but . . . a sentence or two later . . . contradict what he said." **Id**. Later that same day, Patty Pope called police and advised that she had received a call from Petitioner stating he had been attacked. When police arrived at the scene, Petitioner told police that Iceman had attacked him; he was also bleeding from his eye and rib cage area. The next day, in another police interview, Petitioner stated that he was wearing his glasses when Iceman hit him, but when police questioned how Iceman hit him in the eye, without breaking his glasses, Petitioner became angry. Police also asked Petitioner to advise where he would look for Davis, if he were in their shoes. He gave them three locations, one of which was Ted and Patty Pope's property. It was commonly known that Petitioner sometimes hunted on their land.

On September 18, 2003, while conducting a search of the Pope's property, officers found a red fireman's bag, partially unzipped, in a pond. (R. 207; 212). Upon opening the bag, police found two severed arms, a severed head, a severed leg, blue plastic material, a glove and several bricks. The next day in a nearby creek, officers found a partially burned torso, with nine stab wounds to the left chest area, and one leg attached. All of the remains were determined to belong to Davis. A glove matching the one found in the red fireman's bag was also found in the area near the torso. (R. 340-342). The cause of death was determined

to be nine stab wounds to the chest.

It was later discovered that the red bag containing Davis's partial remains belonged to Ted Pope and was kept in his GMC truck. (R. 465-466). Petitioner had borrowed Pope's GMC truck after his truck was burned, and returned it a week after the body was found, without the bag. (R. 470). Officers also found a brick pile, with shoe prints, on the Pope's property, that matched a pair of shoes later confiscated from Petitioner's home. (R. 400-401). Bricks found in the red bag also matched the bricks in the pile where the footprint was found. (R. 648). It was also determined that the blue plastic material in the fireman's bag came from a swimming pool cover behind the Pope's home. (R. 413-414). Ted Pope had noticed the cover was missing. (R. 472). Davis's hair was also found on a kaiser blade in the back of the Pope's GMC truck, which Petitioner had borrowed. (R. 453-458).

At trial, the Pope's neighbor, who knew Petitioner well, testified that she saw Petitioner, through her kitchen window on the Pope's property, on September 17, 2003. She testified that she saw Petitioner emerge from the woods on a four-wheeler, run into the Pope's carport, and then run back carrying a red bag with black handles, and something blue. He then went back into the woods. He then reappeared sometime later, and retrieved "something long and shiny" from the Pope's shed, before going back into the woods. He later came back from the woods, threw something into the Pope's shed, and drove away at a high speed in Ted Pope's GMC truck.

When police arrived at Petitioner's trailer to arrest him, a SWAT team had to make a forcible entry because Petitioner refused to come out of his trailer. (R. 112). After his arrest, Petitioner confessed to killing Davis, but claimed it was an accident. The Mississippi Supreme Court's summary of Petitioner's confession, is produced, in relevant part, as follows:

> He claimed that he, Davis and Iceman were at a shack in the woods where Davis allegedly hid narcotics. He said that she retrieved the narcotics, but then got into an argument with Iceman about them. Savell claimed that he then hit Davis "up side her head" to get her to be quiet, causing her knees to buckle, after which she fell to the ground face forward. He stated that, when he turned her over, he knew he had killed her. Savell claimed that he and Iceman then tried to put the body in an old well, but were unsuccessful, so they buried her in a shallow grave. The following day, he put the body in a "Dive Team" bag to keep it together. Iceman's brother, Bradley, supposedly was to dispose of the body. Police then went to the site mentioned by Savell and found the bag and shallow grave. . . .

> In the in-depth confession, Savellclaimed that, on September 15, 2003, he took Bradley out to the Pope property and showed him "a way to go behind Patty's to get Mandy's body so no one would see him." Savell stated that he then gave Bradley a red fire department bag he took out of Ted Pope's truck.

**Id.** at 967. Law enforcement was never able to find Iceman nor identify any person known to be dealing methamphetamine who used that name. (R. 189 - 190; 226; 258-259).

At trial, the pathologist testified that Davis had been stabbed nine times in the left chest with such force that two of her ribs were fractured. (R. 386). The manner of death, according to the pathologist, was internal bleeding from stab

wounds to the left lung. (R. 392). He also noted that although the lung had undergone such advanced decomposition that there was no residual lung tissue left to examine, "the stabbing instrument would have penetrated into the area of the left lung." (R. 386). The pathologist also opined the "chop wounds" were likely inflicted by a hatchet, axe, machete, or "a similar type of relatively sharp-edged instrument," including a kaiser blade. (R. 388-389). Lastly, the pathologist testified that the amputations and decapitation had occurred post-mortem. (R. 385-386).

## PROCEDURAL HISTORY

Petitioner was convicted of murder in the Circuit Court of Neshoba County, Mississippi, and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Petitioner appealed his conviction and sentence to the Mississippi Supreme Court, assigning as error the following (as stated by Petitioner):

1. The court erred in failing to suppress appellant's first statement.
2. The court erred in overruling appellant's hearsay objection.
3. The court erred in overruling appellant's objection to admissibility into evidence of the shoes and in denying appellant's motion to suppress them.
4. The court erred in sustaining the objection of the prosecutor to appellant's cross-examination of prosecution witness Patty Pope.
5. The court erred in admitted into evidence appellant's confession.

On May 9, 2006, the Mississippi Court of Appeals affirmed Petitioner's conviction and sentence. **Savell v. State**, 928 So. 2d 961 (Miss. App. 2006).

On April 16, 2007, Petitioner filed an "Application for Leave to File Motion for Post Conviction Collateral Relief in Trial Court" and "Motion for Post Conviction Relief to Vacate and Set Aside Conviction and Sentence" in the Mississippi Supreme Court. In their summation of this case's procedural history, Respondents contend that Petitioner raised the following three grounds in his motion for post conviction relief:

1.      Denial of Effective Assistance of Counsel

2.      Denial of Effective Assistance of Counsel

3.      Cumulative Error

(See Respondent's Answer to the Petition for Habeas Corpus, p. 4). The Mississippi Supreme Court denied Petitioner's application on May 9, 2007, finding the following:

> After due consideration, the panel finds that Savell's claims that he received constitutionally ineffective assistance of counsel fail to meet both prongs of **Strickland v. Washington**, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The panel further finds that Savell has failed to make a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. §99-39-27(5). Accordingly, Savell's application for post-conviction collateral relief should be denied.

(Exhibit B to Respondent's Response to Habeas Petition).

## STANDARD OF REVIEW

This case is controlled by the applicable portions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-32, 110 Stat. 12144. The AEDPA and case law interpreting it provide the standards under which the

Petition must be evaluated.  **See Neal v.  Puckett**, 286 F.  3d 230, 235 (5th Cir.

2002), *cert.  denied*, 537 U.S. 1104 (2003).   As an initial matter, under AEDPA,

exhaustion of state remedies is a mandatory prerequisite to federal habeas relief

under  28 U.S.C. § 2254, which provides as follows:

> (a)    The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> (b)    (1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

>> (A)    the applicant has exhausted the remedies available in the courts of the State; or

>> (B)    (i)    there is an absence of available State corrective process; or

>>        (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.
>>               ...

> (c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To satisfy the exhaustion requirement, a petitioner must first present his

claims to the highest state court so that it is given a fair opportunity to consider

and pass upon challenges to a conviction, before those issues come to federal

court for habeas corpus review.  **O'Sullivan v Boerckel**, 526 U.S. 838, 844-45

(1999).  In addition to determining whether the Petitioner has exhausted state

court remedies, federal courts must also determine whether the state court has decided the claim on the merits. Where the state court has adjudicated the merits, habeas relief is barred except under very limited circumstances under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was **contrary to, or involved an unreasonable application of, clearly established Federal law**, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an **unreasonable determination of the facts in light of the evidence** presented in the State court proceeding.

(Emphasis added) 28 U.S.C. § 2254(d).

An "unreasonable application" by a state court decision is where the court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." **Bell v. Cone**, 535 U.S. 685, 694 (2002). Merely an erroneous or incorrect application of federal law is not to be considered unreasonable; the state-court's application must be objectively unreasonable before relief may be granted. **Rompilla v. Beard**, 545 U.S. 374, 380 (2005). *See also* **St. Aubin v. Quarterman**, 470 F.3d 1096, 1099 (5th Cir. 2006).

Factual findings are presumed to be correct, and the Court defers to the state court's decision regarding factual determinations unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." **Hill v. Johnson**, 210 F.3d 481, 485 (5th Cir. 2000).

Federal courts have no authority to grant habeas corpus relief simply because "we

conclude, in our independent judgment, that a state supreme court's application

of [federal] law is erroneous or incorrect." **Catalan v. Cockrell**, 315 F.3d 491,

493 (5th Cir. 2002). Indeed, a federal court does not "sit as a 'super' state

supreme court" and should decide the issues presented by the habeas petition

"only to the extent that federal constitutional issues are implicated." **Smith v.

McCotter**, 786 F. 2d 697, 700 (5th Cir. 1986); *see also* **Mendiola v. Estelle**,

635 F.2d 487, 491 (5th Cir. 1981). A determination of a factual issue made by a

state court is entitled to a presumption of correctness which the petitioner has the

burden of rebutting by clear and convincing evidence. 28 U.S. C. §2254 (e)(1).

*See also* **Schriro v. Landrigan**, 127 S. Ct. 1933, 1939-40 (2007). The state

court's decision shall be considered contrary to federal law if it directly conflicts

with prior Supreme Court holdings, or it reaches a different conclusion than that

reached by the Supreme Court on materially indistinguishable facts. **Henderson

v. Quarterman**, 460 F.3d 654, 659 (5th Cir. 2006). Questions of fact are

reviewed under § 2254(d)(2), while questions of law, or mixed questions of law

and fact, are reviewed under §2254(d)(1).

## GROUNDS FOR FEDERAL HABEAS RELIEF

In the subject case, Petitioner enumerated the following grounds in his

habeas petition:

|                |                                                                     |
|----------------|---------------------------------------------------------------------|
| Ground One:    | Ineffective Assistance of Counsel in violation of the 6th Amendment to the |

10

|                   |                                                                                                                      |
|-------------------|----------------------------------------------------------------------------------------------------------------------|
|                   | United States Constitution. (Failure to conduct adequate discovery)                                                  |
| Ground Two:       | Ineffective Assistance of Counsel in violation of the 6th Amendment to the United States Constitution. (Failure to subpoena witnesses) |
| Ground Three:     | Cumulative error in violation of the 5th and 14th Amendments to the United States Constitution.                      |

Since filing his initial habeas petition, the docket reflects Petitioner has filed several pleadings, including an amended petition, in which he raises the following additional grounds: (as stated by Petitioner)

|                   |                                                                                                                      |
|-------------------|----------------------------------------------------------------------------------------------------------------------|
| Ground Four:      | the trial court's appointment of public defenders deprived Petitioner of his constitutional right to his choice of counsel; |
| Ground Five:      | the evidence was insufficient to support his conviction;                                                             |
| Ground Six:       | the evidence was insufficient to establish *corpus delicti*;                                                          |
| Ground Seven:     | the indictment was insufficient because it failed to include malice aforethought and failed to give timely notice of the charges filed. |

(See ECF No. 30)

The only discernible response from Respondents addressing the arguments raised in the amended petition appear in their Response to Petitioner's Motion for Summary Judgment. There, Respondents maintain that the amended claims are procedurally barred from federal review under **Sones v. Hargett**, 61 F. 3d 410,

416 (5th Cir. 1995), because they have never been properly presented to the Mississippi Supreme Court. They also submit that because Petitioner has already filed a petition for post-conviction collateral relief in state court, which was denied on May 9, 2007, any petition challenging these new claims would be procedurally barred as a successive petition. *See* Miss. Code Ann. § 99 39-27(9).

Petitioner insists that the claims raised in his amended petition, were "touched upon," in his state court post-conviction motion, and like Grounds One, Two and Three, the Mississippi Supreme Court decided their merit. He argues further that as a *pro se* litigant, he should not be penalized for inartful drafting. (See Petitioner's [10] Memorandum in Support of Attachment to Petition for Writ of Habeas Corpus, p. 1; and, [30] Memorandum in Support of Amended Writ of Habeas Corpus, pp. 26-30).

The Undersigned has carefully reviewed the state court record and in the interest of justice, employs liberal construction to Petitioner's argument that his amended claims were raised in his post-conviction motion. Even with liberal construction, however, the Court cannot grant Petitioner habeas review as to all of his amended claims. For example, although grounds five, six, and seven appear to have been raised in Petitioner's state court post- conviction motion as supporting arguments for his ineffective assistance of counsel claims, the same cannot be said for Petitioner's claim that he was denied his choice of counsel, in ground four.[1]

---

[1] To the extent Petitioner does not intend to raise these as ineffective assistance of counsel claims, but as independent claims, they are procedurally barred under **O'Sullivan v. Boerckel**, 526 U.S. 838, 119 S.Ct. 1728 (1999). Neither cause nor prejudice has been shown to overcome the procedural bar as to these claims; nor, has

It is clear from Petitioner's post -conviction motion that he argued that his court -appointed counsel should have been removed because they allegedly failed to perform a proper pretrial investigation.  Before this Court, however,  Petitioner attempts to tack onto that argument a new claim that the trial court erred when it denied his "choice of counsel" at the *informa pauperis* hearing; specifically, he claims the court erred in ordering that Petitioner's motorcycle be sold as payment for counsel's fees.   He maintains this was error because he should have been allowed to use the sale proceeds  to retain his counsel of choice.   This precise argument was never presented to the state courts.  Rather, it is raised for the first time in Petitioner's federal habeas petition.  As such,  it is procedurally barred from federal review.

## ANALYSIS

### I.  Grounds One and Two

In  Grounds  One  and  Two,  Petitioner  argues  he  was  denied  effective assistance of counsel because counsel (1) failed to adequately investigate the facts of his case and   (2) failed to subpoena witnesses to testify on his behalf. Respondents correctly point out that Petitioner fails to provide a basis in support of these claims.  He fails, for example, to identify what defenses warranted further investigation, and fails to set forth any facts that might have resulted had defense counsel conducted more investigation or prepared more extensively for trial.

---

it been shown that failure to consider these grounds on the merits will result in a fundamental miscarriage of justice.

The same holds true for Petitioner's claim that counsel was ineffective because he failed to subpoena witnesses. Petitioner does not identify what witnesses should have been called and also fails to indicate what testimony these unidentified witness might have provided. Moreover, as a general matter in habeas proceedings, the Fifth Circuit has held:

> Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. [Citation omitted.] Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution. **Lockhart v. McCotter**, 782 F.2d 1275, 1282 (5th Cir. 1986);

**Sayre v. Anderson**, 233 F. 3d 631, 635-636 (5th Cir. 2001).

In light of the foregoing, Respondents submit that Petitioner's claims of ineffective assistance of counsel as to grounds one and two are nothing more than conclusory allegations insufficient to entitle Petitioner to habeas relief. The Court agrees. The Undersigned has also reviewed the entire state court record, which includes the transcript of the trial, including the pretrial proceedings, jury instructions and other pleadings, as well as the appellate record contained therein. This review convinces the Undersigned that the performance of counsel does not warrant habeas relief as to grounds one and two.

To be entitled to federal habeas corpus relief on a claim of ineffective assistance of counsel, Petitioner must demonstrate that the Mississippi Supreme Court's adjudication of his claim was an "unreasonable application" of **Strickland v. Washington,** 466 U.S. 668 (1984). **Strickland** requires proof that "counsel's

14

performance was deficient" and "the deficient performance prejudiced the defense" so gravely as to "deprive the defendant of a fair trial; a trial whose result is unreliable." **Strickland**, 466 U.S. at 687, 688. Even if we found the Mississippi court's application of **Strickland** to be incorrect, we could not recommend granting habeas relief unless we found that court's application of **Strickland** to be objectively unreasonable or an actual misapplication of the law. *See* **Neal v. Puckett**, 286 F.3d 230, 236 (5th Cir. 2002) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of **Strickland** is erroneous or incorrect."). In other words, to prove deficient performance by counsel, a habeas petitioner must demonstrate that counsel's representation fell below the objective standard of reasonableness. **Virgil v. Dretke**, 446 F. 3d 598 (5th Cir. 2006).

Lastly, to obtain habeas relief based on a claim of ineffective assistance of counsel, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy." **Knox v. Johnson**, 224 F. 3d 470, 479 (5th Cir. 2000). The **Strickland** Court advised:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In an ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

**Strickland**, 466 U.S. at 690-691.

In this case, notwithstanding Petitioner's claims of ineffective assistance, the record reveals that counsel filed numerous motions on Petitioner's behalf, including but not limited to, a motion to change venue; a motion to suppress his confession; a motion for additional time to conduct discovery; and motions for a new trial and mistrial. Counsel also filed a motion for the appointment of a pathology expert to refute the testimony of the state pathologist, and a motion for a psychiatric examination of Petitioner.

The record also reflects that the defense presented the jury with at least two alternative theories as to who murdered the victim: One, that Petitioner hit the victim to prevent Iceman from shooting her; and, two, that Patty Pope, who was also investigated as a person of interest, committed the murder because she, like the victim, shared an intimate relationship with Petitioner. Counsel also pointed out that the kaiser blade and swimming pool liner belonged to Patty Pope. (R. 640; 645). Throughout trial, defense counsel also repeatedly stressed that Petitioner's confession that he hit the victim in the head did not comport with the medical examiner's finding that the cause of death was nine stab wounds to the chest. During cross examination of the pathologist, counsel also elicited testimony that the victim was likely lying on her back while the wounds were inflicted, which contradicted Petitioner's account that she fell forward when he hit her. (R. 393). Counsel also challenged the reliability of the medical examiner's cause-of-death testimony because of the decomposition and dismemberment of the victim's body.

Lastly, in his arguments to the jury, counsel pointed out that no direct physical evidence was ever presented to establish beyond a reasonable doubt that Petitioner inflicted the stab wounds.

Petitioner's claims in ground one and two that counsel failed to investigate and subpoena witnesses are speculative and conclusory.  As such, they can form no basis for habeas relief, particularly when considered in the context of counsel's performance in the entire case.   The Mississippi Supreme Court's  rejection of these  claims therefore was not contrary to, or an unreasonable application of **Strickland**.

### Grounds Three: Cumulative Error

In ground three,  Petitioner argues he was denied a fair trial because of cumulative error.   In support of this claim, Petitioner makes the following arguments:  (1) the trial court denied Petitioner the opportunity to obtain his counsel of choice (*ground four*); (2) counsel was ineffective in failing to establish that the evidence was insufficient to support a conviction for murder (*ground five*); (3) counsel was ineffective in failing to establish the elements of "corpus delicti" (*ground six*); and, (4) counsel was ineffective in failing to challenge the validity of the indictment because the language  "malice aforethought" was omitted (*ground seven*).  (See Petitioner's [29] Amended Writ of Habeas Corpus, p.  9.)  Petitioner contends that when these errors are examined cumulatively, there is a reasonable probability that he would have been acquitted but for them.

Cumulative error is only permitted as an independent  basis for habeas relief,

when the following are met:  "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were  not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" **Wesley v. Johnson**, 83 f.  3d 714, 726 (5th Cir. 1996) (*citing* **Deaden v. McNealy**,  978 F.  2d 1453, 1454 (5th Cir.  1992)).   Respondents submit, and the Court agrees, that no merit can be found to Petitioner's claims in grounds one and two.  As demonstrated below, the same holds true for the claims raised by Petitioner in grounds  four,  five,  six,  and  seven.   As  a  result,  Petitioner  cannot  establish cumulative error entitles him to habeas relief.

## Ground Four: Choice of Counsel

As discussed *supra*, Petitioner's claim that he was denied his choice of counsel in ground four is procedurally barred from habeas review, as it cannot be found to have been raised in the state court motion for post-conviction relief.[2] Moreover, to the extent Petitioner attempts to raise the claims stated in grounds five, six, and seven as independent claims, they are procedurally barred under ***O'Sullivan v.  Boerckel***, 526 U.S. 838, 119 S.Ct.  1728 (1999).  This Court therefore reviews these claims only as challenging the effectiveness of counsel.

**Ground Five:       Counsel was Ineffective in Failing to Challenge the Sufficiency of the Evidence  Supporting Conviction**

---

[2] It is also without merit, as the record clearly reflects Petitioner was appointed public defenders because he was deemed indigent.

In ground five, Petitioner argues counsel failed to effectively challenge the sufficiency of the evidence.    A petitioner's challenge to the sufficiency of the evidence, however, will support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the State, is such that no reasonable factfinder "could have found the essential elements of the crime beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S. Ct.  2781, 2789, 61 L. Ed. 2d 560 (1979); *see also* **Marler v. Blackburn**, 777 F.2d 1007. 1011 (5th Cir.  1985).  "The evidence need not exclude every reasonable hypothesis of innocence, however, and a jury may choose any reasonable construction of the evidence." **Story v.  Collins**, 920 F.  2d 1247, 1255 (5th Cir.  1991).

Petitioner's primary complaint concerning the sufficiency of the evidence is that counsel did not effectively challenge the pathologist's findings.   The pathologist, he argues,  failed to determine whether the nine stab wounds were inflicted pre-mortem, and failed to examine the victim's lungs to determine how deep the weapon penetrated into her chest cavity.  The victims' lungs, in fact, had undergone such advanced decomposition that there was no residual lung tissue left to examine. Also, there was no eyewitness or DNA evidence establishing that Petitioner stabbed the victim, and the pathologist's cause-of- death finding did not comport  with Petitioner's confession that he hit the victim in her head.   Had counsel raised these issues at trial,  Petitioner argues, no reasonable jury could have found beyond a reasonable doubt that Petitioner committed the murder.

First, Petitioner's claims are factually incorrect.  The record reflects that

counsel raised most, if not all, of these issues during trial.  Secondly, either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying a conviction, and the circumstantial evidence against Petitioner was constitutionally sufficient.  *See*  **Jackson v. Virginia**, 443 U.S. 307 (1979).  For example, Petitioner was the last known person to see the victim alive; he was also seen leaving the Pope's property carrying a red bag with black handles, and "something long and shiny;" shoe prints on the Pope's property matched a pair of shoes confiscated from Petitioner's home; the victim's hair was found on a kaiser blade in the back of the Pope's truck, which Petitioner had borrowed; Petitioner's statements describing how his truck caught fire were inconsistent with the evidence;  Petitioner's claims of the victim's drug use were uncorroborated and police were unable to locate anyone known as Iceman; and,  Petitioner confessed to killing the victim and advised police as to where they could find the body.

In light of all the evidence presented at trial, the appellate court's rejection of Petitioner's claim that counsel was ineffective in challenging the sufficiency of the evidence, cannot be considered contrary to, or an unreasonable application of clearly established federal law.  No habeas relief is warranted on this claim.

**Ground Six:**        **Counsel was Ineffective in Failing to Argue that Corpus Delicti was not Sufficiently Established**

As to Petitioner's claim that  *corpus delicti* was not sufficiently established, Petitioner contends counsel was ineffective for failing to challenge the State's failure to produce sufficient credible evidence that a killing occurred; that is, the evidence was insufficient to prove beyond a reasonable doubt the essential element

20

of murder -- that the victim's death occurred by criminal agency of another person. *See* **Fannings v. State**, 997 So. 2d 253 (Miss. App. 2008). As examples, Petitioner cites the pathologist's failure to determine whether the stab wounds were inflicted accidentally, and his failure to consider whether a drug overdose was the cause of death. Had counsel made these arguments at trial, Petitioner maintains the jury would have determined that no killing had occurred.

As a general matter, in the context of a federal habeas corpus proceeding, a state's *corpus delicti* rule has no independent constitutional footing. *See* **Autry v. Estelle**, 706 F. 2d 1394, 1407 (5th Cir. 1983). An allegation, however, that insufficient evidence is present to demonstrate that the victim's death occurred by a criminal act of another person raises a due process claim cognizable for federal review. *See* **West v. Foster**, 2009 WL 1111175 (D. Nev. 2009), *citing* **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979). Moreover, to the extent Petitioner claims that without his confession, the evidence was insufficient to establish *corpus delicti*, under Mississippi law, *corpus delicti* need not be established beyond a reasonable doubt but to a probability. **Buford v. State**, 69 So. 2d 826 (Miss. 1964).

Considering the State's proof as discussed herein, the Court has no difficulty in concluding that the evidence, independently of Petitioner's confession, was constitutionally sufficient to establish *corpus delicti*, and that counsel was not ineffective in failing to raise a frivolous issue. The victim sustained nine stab wounds to her chest and her partially burned body was found with her limbs

dismembered and her head decapitated.  Accordingly, the rejection of this claim by the state appellate court cannot be considered contrary to, or an unreasonable application of clearly established federal law.

**Ground Seven:     Counsel was Ineffective for Failing to Challenge the Sufficiency of the Indictment**

Lastly, Petitioner claims that the indictment was facially defective  because the language  "malice aforethought"  was omitted.  Although unclear, it appears Petitioner argues that the indictment was defective because without this language, it did not sufficiently allege murder.   Petitioner asserts that counsel was ineffective for failing to file a motion to quash the indictment on this basis, as well as for lack of sufficient evidence and inadequate notice of the charges made.  It is well settled that the sufficiency of an indictment is not a matter for federal habeas relief unless the indictment is so defective that it deprives the state court of jurisdiction.  **Uresti v. Lynaugh**, 821 F.  2d 1099 (5th Cir.  1987); **Norman v.  McCotter**, 765 F.2d 504 (5th cir.  1985).  No such showing has been made here.  Thus, the rejection of this claim by the state appellate court cannot be considered contrary to, or an unreasonable application of clearly established federal law.

In sum, the Court finds that in the context of the entire case, Petitioner's representation was constitutionally adequate,  in that in no single respect were counsel's representations both inadequate and prejudicial to the defense. Accordingly, the rejection of the ineffective assistance claims raised in grounds one, two, three, five, six, and seven by the state appellate court cannot be considered contrary to, or an unreasonable application of **Strickland**.

**Conclusion**

It is therefore the recommendation of the Undersigned United States Magistrate Judge that the Petition for Writ of Habeas Corpus should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009).

THIS the 13th day of August 2010.

<u>           S/Linda R. Anderson      </u>
UNITED STATES MAGISTRATE JUDGE